## CAIN'S COFFEE CO. et al. v. CITY OF MUSKOGEE et al.

No. 24943.   April 23, 1935.

636

Gotwals, Gibson, Killey & Gibson, for plaintiffs in error.

Forrester Brewster, for defendants in error.

PER CURIAM. This was an action commenced in the district court of Muskogee county, Okla., wherein the plaintiffs in error were plaintiffs and the defendants in error were defendants. The parties will be referred to as they appeared in the trial court.

The action was brought to enjoin the enforcement of ordinance No. 1447 of the city of Muskogee, which was an ordinance relating to the distribution, delivery, offering for sale, or sale at wholesale of any fruits, groceries, and/or vegetables within the city of Muskogee without first obtaining a license therefor. The pertinent portion of the ordinance involved was as follows:

"Be It Ordained by the Council of the City of Muskogee:

"Section 1. License Required. It shall be unlawful for any person, firm or corporation to distribute, deliver, offer for sale or sell at wholesale any fruits, groceries, and/or vegetables within the city of Muskogee, Okla., without first obtaining a license therefor.

"Section 2. License, Amount of. Before any person, firm or corporation shall be licensed as provided in section one hereof, there shall be paid a fee of $100, which license shall be in force one year from the date of issuance.

"Section 3. Inspection Required. All commodities for sale as specified in section one hereof shall be at all times subject to the inspection of the health department of the city of Muskogee.

"Section 4. Exemption of Farmers. Nothing herein shall be construed to prevent any farmer, gardener, grower or producer from personally selling the products of his farm, orchard, garden, grown or raised, produced, slaughtered or caught by himself, provided; That such exemption shall be shown by sworn affidavit, if requested."

Section 5 provides the penalty and section 6 is the emergency.

The plaintiff Cain's Coffee Company owned and operated an establishment in Oklahoma City, which, according to the evidence acquired raw materials, such as green and unprepared teas, spices, coffee, and other materials; that it there treated, milled, worked on them, by human labor and mechanical devices and appliances in its factory; that said plaintiff sold and distributed the products of said factory through the state of Oklahoma by means of automobile trucks owned and operated by it, which trucks had regular established routes over which they traveled, carrying the products of the plaintiff Cain's Coffee Company through the various counties of the state and into the city of Muskogee; that the other plaintiff, Robert F. Smith, was an employee of the Cain's Coffee Company, having charge of the sale and distribution of said products in the city of Muskogee and surrounding territory; that the Cain's Coffee Company did not own and maintain any store, warehouse, or other building in the city of Muskogee; that Robert F. Smith, its salesman, secured orders and solicited business from restaurants, hotel operators, and other institutions; that said orders were placed with the plaintiff Cain's Coffee Company, and thereafter said purchases were delivered to the said customers by truck; that neither the Cain's Coffee Company nor Robert F. Smith maintained any warehouse or fixed place of business in the city of Muskogee. It was admitted that the plaintiffs had not paid the license fee required by said ordinance No. 1447, and plaintiffs claimed that they were not covered by said ordinance; that the city, through its officers, who were made defendants, were about to and were threatening the arrest and imprisonment of the employees of plaintiff Cain's Coffee Company, and that the officers had arrested and threatened to fine and imprison the plaintiff Robert F. Smith, an employee of the Cain's Coffee Company, for noncompliance with said ordinance; that the plaintiffs refused to pay said tax on the theory that they were not governed or controlled by said ordinance, claiming that they were a manufacturer of said products and that said ordinance did not control them; that said ordinance was illegal, unconstitutional, discriminatory; that said city of Muskogee did not have the authority under the general laws of the state of Oklahoma to pass such an ordinance; that said ordinance denied to the plaintiffs the rights guaranteed to them under and by virtue of the Constitution of the

United States, and the Fourteenth Amendment thereto, as well as the rights guaranteed to them by the Constitution of the state of Oklahoma, and particularly article 2, sections 2, 7, and 15; that the enforcement of said ordinance would destroy plaintiff's business in and about the city of Muskogee; would impair the obligation of plaintiff Robert F. Smith's contract with plaintiff Cain's Coffee Company; that it was an attempt to prohibit the plaintiff Cain's Coffee Company from doing business in the city of Muskogee except upon payment of an illegal and unlawful license fee; that it deprived the plaintiff of its property without due process of law; that it imposed an excessive, exorbitant, prohibitive, and confiscatory license amounting to confiscation; that irreparable injury would result to the property of the plaintiff if an injunction were not issued.

A temporary injunction was granted; upon a final hearing the temporary injunction was dissolved and judgment rendered for the defendants. Motion for new trial was filed and overruled, and the cause was brought to this court for review.

The applicable portion of the Oklahoma statute is as follows:

"The city council shall have authority to levy and collect a license tax on * * * merchants of all kinds, grocers. * * *" Section 6389, O. S. 1931.

It is contended by the city of Muskogee that the plaintiff Cain's Coffee Company is a merchant or grocer, while the contention of the plaintiff is that it is a manufacturer and neither a merchant nor grocer.

The undisputed evidence discloses that the plaintiff Cain's Coffee Company does not maintain a place of business within the city of Muskogee; that it takes orders through its salesmen from the various merchants for its coffee, teas, spices, and extracts, and delivers them by truck to said purchasers; that it acquires raw materials, such as green and unprepared coffee, teas, spices, and other materials ,which are unfit for human consumption and can be used only after the same have been treated, milled, worked upon, and processed by human skill and ingenuity and mechanical devices and appliances of the plaintiff corporation; that said processes can be accomplished only by specially constructed scientific machinery and by skilled manipulation; that all of said materials are purchased in bulk; that none is sold or disposed of by the plaintiff

in the natural form as acquired; that no part of plaintiff's profit is made or acquired through the sale of such commodities; that it is only after the same have passed through the factory of the plaintiff that they are fit for human consumption.

In passing upon an ordinance similar to the ordinance involved in this case, this court, in the case of Grantham v. City of Chickasha, 156 Okla. 56, 9 P. (2d) 747, in a quotation from State v. Fleming, 24 N. D. 593, 140 N. W. 674, said:

" 'A merchant is one who buys to sell, or buys and sells, goods or merchandise in a store or shop.' In the body of the opinion, after a review of the definition of the term 'merchant' from Webster's New International Dictionary, Webster's International, the Century Dictionary, and Kinney's Law Dictionary, the court said: 'From these definitions and those from any other authorities which might be cited, it would seem that two essentials are necessary to constitute one a merchant in the ordinary meaning of the word, namely, that he must buy and sell, and that he must keep a shop or store for that purpose. * * * The facts applied in the case at bar exclude the defendant from these definitions. * * *' "

In the same case, quoting from the opinion in the case of Phillips v. Byers, 189 Cal. 665, 209 P. 557, this court says:

" 'From the authorities above referred to it appears that in the absence of statutory regulation or special circumstances, the courts have given the ordinary meaning to the terms "merchant" and ."manufacturer." It follows that one who simply manufactures an article and sells it is not a merchant, and that although a manufacturer may also be a merchant if he buys and sells goods, he does not become one by disposing of the goods he has produced, at a manufacturer's profit. There is no statute in this state which defines the terms, and in the absence of such provision they must be given their ordinary meaning. * * *

" 'Therefore, giving full weight to the testimony that the company sold its manufactured goods standing in the warehouse, as well as those manufactured to order, such a fact would not be sufficient to render the company a merchant.' "

In the case of Murphy v. Arnson et al., 96 U. S. 131, 24 L. Ed. 773; the court says:

"In the present case the original elements are fluids and the manipulation and the materials blending with each other form a union which is as much a manufacture within the meaning of the statute as where the materials are mechanically joined together."

In Dolese & Shepard Co. v. O'Connell, 257 Ill. 43, 100 N. E. 235, 236, it is said:

"As used in the statute, the word 'manufacture' is not to be given its technical meaning. The Century Dictionary defines it as 'the production of articles for use from raw or prepared materials by giving these materials new forms, qualities, properties, or conbinations, whether by hand labor or machine.'

"Whenever labor is bestowed upon an article which results in its assuming a new form, possessing new qualities or new combinations, the process of manufacturing has taken place, whether the thing produced be a small article of commerce or a structure, such as a house, road, or bridge."

A similar question was passed upon by the Supreme Court of Kentucky:

"It does this work at its factory in Louisville, employing a large force of helpers, and using extensive and scientific machinery. The processes which appellee uses cannot be performed at all by a small grocery or householder. These processes can be accomplished only by 'specially constructed scientific machinery and by skilled manipulation.' * * *

"If a concern which buys tobacco, cleanses, regrades, and otherwise prepares it so to make it an article of commerce, is a manufacturer, we can see no reason why a concern which imports green coffee and puts it through the several processes necessary to make it fit for human consumption is not also a 'manufacturer' and the output the result of 'manufacture' within the meaning of the statutes exempting manufacturers from taxation for city purposes. * * *

"Whether it is such an establishment does not depend upon the size of the plant, the number of men employed, the nature of the business, or the article to be manufactured, but upon all these together and upon the result accomplished." City of Louisville v. Zinmeister & Sons, 188 Ky. 570, 222 S. W. 958, 10 A. L. R. 1269.

Other cases to the same effect are: Central Trust Co. et al. v. George Lueders & Co. et al., 221 F. 829; Dolese & Shepard Co. v. O'Connell, 257 Ill. 43, 100 N. E. 235; In re Simcox, Inc., 243 F. 479; Lawrence v. Allen et al., 7 How. 785, 12 L. Ed. 914; Carlin v. Western Assurance Company of Toronto, 57 Md. 515, 40 Am. Rep. 440.

There can be no difference in legal effect between the terms "merchant" and "grocer" as used in this statute.

We are therefore of the opinion that, in view of the undisputed evidence in this case, and under the definitions as given in the case of Grantham v. City of Chickasha,

supra, the plaintiff was a manufacturer and not a merchant or a grocer.

It is the contention of the plaintiff that the city of Muskogee did not have the authority under the general laws of the state of Oklahoma to pass the above ordinance. Section 1 of said ordinance reads as follows:

"Section 1. License Required. It shall be unlawful for any person, firm or corporation to distribute, deliver, offer for sale or sell at wholesale any fruits, groceries, and/or vegetables within the city of Muskogee, Okla., without first obtaining a license therefor."

The only provisions in the statutes of Oklahoma which give the city authority to levy a license are embodied in said section 6389, O. S. 1931. Said section nowhere refers to the right to require a license for wholesalers. This court in numerous cases has held that the above section of our statute cannot be enlarged upon. A municipal corporation in this state has only such powers as conferred upon it by the Legislature.

"Municipal corporations can exercise only such powers of legislation as are given them by the lawmaking power of the state, and grants of such powers are strictly construed against the corporations, and when any fairly reasonable doubt exists as to the grant of the power, such doubt is resolved by the courts against the corporation, and the existence of the power is denied." Grantham v. City of Chickasha, 156 Okla. 56, 9 P. (2d) 747; In re Lankford, 72 Okla. 40, 178 P. 673; Ex parte Stewart, 162 Okla. 32, 18 P. (2d) 1054; Shipley Baking Co. v. City of Hartshorne, 156 Okla. 74, 9 P. (2d) 754; Y. & Y. Cab Service, Inc., et al. v. City of Oklahoma City, 167 Okla. 134, 28 P. (2d) 551.

"Municipal corporations can exercise only such powers of legislation as are given them by the lawmaking power of the state, and grants of such powers are strictly construed against the corporations and when any fairly reasonable doubt exists as to the grant of the power, such doubt is resolved by the courts against the corporation, and the existence of the power is denied." Ex parte Holmes, 162 Okla. 30, 18 P. (2d) 1053.

The enactment of said ordinance by the city of Muskogee was an effort on its part to extend its power beyond that given it by the Legislature.

Nowhere in said statute does the Legislature authorize the imposition of a license tax upon a wholesaler. A wholesaler may be a grocer or a merchant or he may not. If a wholesaler is not a merchant or a grocer, the city is without power to levy a li-

cense. If he is a merchant or a grocer, the city has that power, not because of the fact that he may be a wholesaler. but solely because of the fact that he is a merchant or a grocer. This ordinance attempts to require a license for distributing, delivering, offering for sale, or selling. The mere fact that one may distribute does not make him a merchant or a grocer. The fact that he may deliver does not make him a merchant or a grocer. The fact that he offers for sale or sells does not make him a merchant or grocer, whether that sale be at wholesale or retail. The terms "merchant" or "grocer" must be taken in their usual ordinary, and generally accepted meaning. To be a merchant or grocer, one must buy as well as sell. It is necessary under our decisions that a merchant or grocer have an established place of business within the city. One distribution, delivery, offering for sale, or sale, would, under this ordinance, subject the party to the necessity of procuring a license or subject him to the penalty involved. Yet an isolated sale would not make a merchant or grocer. A merchant or grocer must be in the business of buying and selling commodities, and one isolated sale does not constitute a man either a merchant or a grocer.

"Was it a merchant or shopkeeper? By a merchant, as that term is ordinarily used, is intended a person, whose business or occupation is buying and selling commodities. Although every merchant buys and sells commodities, the converse of this proposition is not true, for but a very few of those who buy and sell commodities are merchants." White Mountain Fur Co. v. Town of Whitefield (N. H.) 91 Atl. 870.

As stated in the Grantham v. Chickasha Case, supra, "buying is an essential element"; the maintenance of a place of business within said city is likewise an essential element. Neither of those elements is imbodied in said ordinance. The statute makes no reference to buying, but places the responsibility for a license solely upon selling, and a sale, delivery, distribution, or offering for sale does not make one a merchant. The essential elements are not embodied in this ordinance. If the city could collect a license for selling, then it might in turn collect another license for buying, and if a man were in fact a merchant, he might be required to pay two licenses, one for buying and one for selling. This was not the intention of the Legislature. Its intention was clearly expressed in the words "merchants of all kinds" and "grocer." This ordinance covers neither, but it is a deliber-

ate attempt to enlarge upon the terms of the statute. The terms "offer for sale" or "sell at wholesale," as referred to in said ordinance, are much broader in their application than the terms "merchants of all kinds" or "grocers," and could, if permitted by this court, extend to wholesalers throughout the state or elsewhere. The city of Muskogee was without power to enlarge upon the generally accepted meaning of the terms. The subjects contained within such an ordinance must be strictly construed and the exercise of the power must be confined within general principles of the law applicable to such subjects.

It has been the policy of this court without exception to construe the above statute strictly and to limit it to the businesses therein referred to. This court has held that an "itinerant merchant" is not a "merchant." That an ordinance assessing $5 a day upon an itinerant photographer was without authority and void; that the business of the "photographer" was not within the statute. Ex parte Holmes, 162 Okla. 30, 18 P. (2d) 1053; Ex parte Stewart, 162 Okla. 32, 18 P. (2d) 1054. That an ordinance attempting to levy a tax upon a vocation of driving a truck for a company engaged in the manufacture of mayonnaise in another city and delivering within another city is void. Ex parte Russum, 156 Okla. 62, 9 P. (2d) 753. That a license tax upon peddlers not residents of the municipality was discriminatory and void. Shipley Baking Co. v. City of Hartshorne, 156 Okla. 74, 9 P. (2d) 754. This section of our statute does not include "wholesalers," does not include "offering for sale or selling at wholesale," or any other words which would authorize the inclusion of these classes within its terms.

"The ordinance in question clearly defines what shall be included under the term 'itinerant merchant,' but the statute does not designate such a term as 'itinerant merchant.' It specifically states 'merchants of all kinds.' This expression 'merchants of all kinds' must be confined within reasonable bounds and limited to the usual generally accepted meaning and scope of the law applicable to that expression and be free from doubtful interpretation. In other words, the ordinance cannot enlarge on the generally accepted meaning of the term 'merchants of all kinds.' 'Merchants of all kinds' does not, in our opinion, mean an itinerant merchant or transient vendor of goods, wares, and merchandise, and the plaintiffs are not merchants of the city of Chickasha within the meaning of the term merchant as used in the statute. These subjects contained in the ordinance must be

construed strictly in determining the power granted, and the exercise of the power must be confined within the general principles of the law applicable to such subjects. See City of St. Paul v. Briggs, 85 Minn. 290, 88 N. W. 984, 89 Am. St. Rep. 554." Grantham v. City of Chickasha, supra.

The effort of the city of Muskogee to broaden the terms of said statute was without effect.

"All acts done beyond the scope of the powers granted are void." In re Unger, 22 Okla. 755, 98 P. 999, 132 Am. St. Rep. 670.

In said Grantham v. City of Chickasha Case, supra, it is said:

"A municipal corporation cannot extend its powers of taxation by an unauthorized definition of the words contained in the grant of power.

"Section 4556, C. O. S. 1921, specifically authorizes the defendant to levy a tax on 'merchants of all kinds.' The statute enumerates many kinds and character of business, but has not seen fit to designate a class known as 'itinerant merchants.' 'Itinerant merchants', 'transient merchants', 'hawkers,' and 'peddlers' for many years have been before the courts for interpretation. * * *

"Cities, unless expressly granted authority by statute, cannot prescribe definitions and meaning to words and terms set forth in the statute which are different from their usual, ordinary, and general acceptation, and thereby extend the meaning of such terms, and a court of equity, upon proper and timely application, may be invoked to enjoin the enforcement of void legislation based thereon which would menace and deprive another of valuable contract or property rights. We conclude that the plaintiffs in the case at bar do not come within the classification 'merchants of all kinds', designated under section 4556, C. O. S. 1921, supra."

Almost identical ordinances were before the court in the aforesaid Grantham v. Chickasha Case, supra, and in Ex parte Russum, supra, and Shipley Baking Co. v. Hartshorne, supra, and in all of said cases it is held that any effort on the part of a municipality to extend the power granted by the Legislature is void. Licenses were required in all of the aforesaid cases, and the court held that an injunction would lie against the enforcement of said ordinances. These cases likewise held that those were actions not involving a prosecution for violation of a municipal ordinance, but actions to enjoin the enforcement of a void ordinance. The plaintiff Cain's Coffee Company had a right to sell its manufactured goods in the city of Muskogee without the payment of an illegal license. It had a right to engage in a lawful business and an inherent right to make a reasonable and legitimate profit out of it without the payment of illegal license tax, which might be increased from time to time until all property rights would be completely destroyed.

"It is plain from the allegations of the petition in this case that the ordinance in question, if allowed to stand, would operate to inflict irreparabe injury to the property rights of the plaintiff. Every one engaged in a legal and lawful business has an inherent right to make a reasonable and legitimate profit out of it. If this ordinance were allowed to stand, not only would all of the profit derived from the plaintiff's business be consumed in the payment of the license tax imposed, but a large portion of the capital invested would likewise be drawn on to satisfy the license tax, which in the end would destroy property rights and inflict irreparable injury.

"Equity by injunction will interfere to prevent the enforcement of an illegal and oppressive ordinance where it is made to appear that valuable property rights are invaded and irreparable injury will result from its enforcement." City of Tulsa v. Metropolitan Jewelry Co., 74 Okla. 107, 176 P. 956.

"Equity will restrain by injunction the enforcement of a municipal ordinance which is void as being unconstitutional and in violation of the statutes of this state, where it appears that valuable property rights are invaded and irreparable injury will result from its enforcement." Grantham v. City of Chickasha, supra.

For the reasons above set forth, the judgment of the trial court is reversed and the cause is remanded, with directions to grant a permanent injunction.

The Supreme Court acknowledges the aid of Attorneys J. E. Curran, R. M. Parkhurst, and H. S. Gurley in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Curran and approved by Mr. Parkhurst and Mr. Gurley, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and WELCH, PHELPS, CORN, and GIBSON, JJ. concur.