Peck, J.
The question presented by this appeal is a narrow one and is based on an uncomplicated factual situation. Unfortunately, its resolution is not correspondingly simple.
The difficulties which the Tax Commissioner, the Board of Tax Appeals and this court, to say nothing of the taxpayers themselves, have experienced in determining the question with which we are faced arise from the language of the statute itself, Avhich provides in part:
‘ ‘ A person who purchases, receives or holds personal property for the purpose of adding to its value by manufacturing, refining, rectifying, or combining different materials with a view of making a gain or profit by so doing is a manufacturer.” (Section 5711.16, Revised Code.)
While the taxpayer in this case makes no claim that it effects any combination of materials within the meaning of this section, it does contend that it adds to the value of the mass *400 of the beans by reason of a “refining” or “rectifying” process. In debating the meaning of those two words, both parties in the present action in their briefs quote dictionary definitions. We find no occasion to encumber this opinion by repeating those quotations because they are of little assistance. As is often true, isolated portions of the dictionary definitions will support the proposition either that the taxpayer is or is not a refiner or a rectifier. Certainly under such fragmentary definitions it may be said that the taxpayer both “refines” and “rectifies.” However, these words cannot be considered out of their statutory context. If the statute merely provided that “one who adds to the value of property by refining such property is a manufacturer” we would be faced with an entirely different problem from that which confronts us under a statute which brackets four methods of increasing value. This bracketing of the four methods becomes of special importance when it is recognized that the other two methods, “manufacturing” and “combining,” clearly contemplate commercial processing. This compels the conclusion that the Legislature had in contemplation the commercial meaning of the words, “refining” and “rectifying.”
This conclusion becomes inescapable if, with this bracketing of the four methods of the statute in mind, portions of the dictionary definitions are eliminated in the order of their obvious inapplicability. Using such an approach, from the definitions of “rectify” in the New Century Dictionary we might first strike the definition, “in elect., to change (an alternating current) into a direct current, without an intermediate transformation of energy,” then other definitions which are equally without application, until finally the following definition is arrived at as being that which the Legislature most probably had in mind, “purify (a spirit or liquor) by repeated distillation, raising it to a required strength, and sometimes adding flavoring material during the process.” Making similar exclusions from the definitions in that dictionary of the word, “refine,” in making a determination of legislative intent, brings us to the conclusion that the definition most reasonably applicable is, “to bring to a fine or a pure state, or free from impurities (as, to refine metal, sugar or petroleum). ” It is not essential to the present decision that we limit the statutory meaning of these words to the defi *401 nitions quoted, but we do hold that, within the meaning of the statute, a process by which a mass of fungible goods, such as beans, is relieved of foreign particles is not refining or rectifying, and a person conducting such a process is not a manufacturer. We are not dissuaded from this conclusion by some rather inconsistent language in Eastern Machinery Co. v. Peck, Tax Commr., 160 Ohio St., 144, 114 N. E. (2d), 55, because of the difference in the factual situations. Similarly, we are of the opinion that the rationale of the decision in Tax Commission v. J. Chas. McCullough Seed Co., 50 Ohio App., 131, 197 N. E., 621, should not be extended beyond the unusual set of facts there reviewed by the Court of Appeals.
At the outset of this opinion we acknowledged that this court has experienced difficulty in determining where to draw the line between manufacturers and nonmanufacturers, and it has even been admitted that this has resulted in “inconsistent decisions with respect to that statutory language” (opinion of Judge Taft in Red Top Brewing Co. v. Bowers, Tax Commr., 163 Ohio St., 18, 125 N. E. [2d], 188). While it may be felt that there is some technical inconsistency in the line of decisions on this point, we feel that it may as accurately be observed that there is a consistency in the pattern of the cases in their tendency to honor traditional concepts of what constitutes manufacturing. Thus, in Middletown Iron & Steel Co. v. Evatt, Tax Commr., 139 Ohio St., 113, 38 N. E. (2d), 585, 138 A. L. R., 426, change of form sufficed to cause the court to conclude that a taxpayer who rebuilt unsaleable machine tools was a manufacturer, and change of form plus the combination of ingredients sufficed for the same result in Jer-Zee, Inc., v. Bowers, Tax Commr., 163 Ohio St., 31, 125 N. E. (2d), 195, and Canteen Co. v. Bowers, Tax Commr., 167 Ohio St., 337, 148 N. E. (2d), 684. Where, as here, the taxpayer’s process effected a removal of foreign substances it was held not entitled to the manufacturing classification (Cleveland-Cliffs Iron Co. v. Glander, Tax Commr., 145 Ohio St., 423, 62 N. E. [2d], 94, involving a process which went further and crushed, screened and combined iron ore from different mines).
The attention of this court has most recently been directed to this subject in Roberts v. Bowers, Tax Commr., 170 Ohio St., *402 99, 162 N. E. (2d), 858. There, in. an opinion replete with a studied avoidance of the consequences of strict adherence to some of the appropriate technical tests, the court adopted the traditional view that short-order cooking is not manufacturing. Without laboring the point that the change from egg to omelette differs from the change from egg to chicken (Miller v. Peck, Tax Commr., 158 Ohio St., 17, 106 N. E. [2d], 776) or the question, whether adding at least seasoning to salads and Salisbury steaks is a “combining of different materials with a view of making a gain,” the court, in effect, adopted the time-honored conclusion that cooking is merely cooking. Not content with reliance on any such homespun basis, however, the per curiam opinion in the Roberts case, after observing that never “heretofore during the many years of existence of the statutory definition has one thought of a restaurant proprietor as a manufacturer,” goes on to point out the distinction between a merchant and a manufacturer. We repeat that distinction as being of present application:
“It has been held that ‘the marked distinction between a manufacturer and a merchant is that the merchant, or dealer, sells to earn a profit, and the manufacturer sells to take profit already earned. He must buy the materials out of which to make his finished product, and he must sell the product of his factory after it is finished. But such dealings are not his occupation. The one supplies him with the materials with which to pursue it, while the other merely enables him to take the profit earned.’ * * *”
Although admitting the lack of analogy between the factual situations of the Roberts case and the present one, we are of the opinion that much of the reasoning and philosophy there is of application here, where the taxpayer sells beans to earn a profit, not merely to take a profit already earned. Such dealings, not the removal of foreign substances from beans, are its occupation.
We have repeatedly admitted that what constitutes manufacturing can only be determined with difficulty, but we feel constrained to further observe that those difficulties are as nothing compared with those which would be encountered if *403 this taxpayer’s operation were held to be manufacturing. If such were to be our holding, where then would be the line of distinction in vast areas of the packaging industry? Would scrubbed and sacked potatoes become the product of “manufacturing”? What then of the tomato boxed after burnishing only by the hand that picked it? And would we then be asked to delete even the packaging requirement and to hold the vendor a manufacturer who only polishes an apple on his trouser leg before pyramiding it on his counter for display?
The taxpayer contends that it is a manufacturer because the beans as it receives them are not saleable under federal law but become so after it has treated them. Without conceding such unsaleability, the Tax Commissioner responds that “being subject to health laws does not make one a manufacturer,” and we are inclined to agree. Whether a given operation constitutes manufacturing within the meaning of the personal property tax laws of Ohio is to be determined from the nature of the operation conducted by the taxpayer and not by whether certain standards are required to be met by him by other laws if he is to continue his business.
The taxpayer has presented certain arguments with reference to statutory construction, and the Tax Commissioner has countered thereto, but in view of the detailed attention given to that subject in the Roberts decision we see no occasion for reiterating the views there expressed.
It is our conclusion that the Board of Tax Appeals did not properly apply the tests laid down in the cases hereinabove cited, and that its decision is therefore unreasonable and unlawful. Such decision is, accordingly, reversed, and the cause is remanded for action consistent with this opinion.

Decision reversed.

Weygandt, C. J., Zimmerman, Matthias, Bell and Herbert, JJ., concur.
Taet, J., dissents.